Gadsby, J.
This is an action of contract for overtime wages alleged to be due the plaintiff from, the defendant under the provisions of the Fair Labor Act of 1938.
The plaintiff worked for the defendant in the Beacon Street yards of the Boston and Albany Railroad on a siding of the defendant.
The facts are briefly as follows:
Certain automobiles were shipped from outside the- Commonwealth to various consignees in this State. They were consigned to various dealers who, when notified by the *93 railroad of their arrival, paid for them and ordered them delivered to the defendant at its private siding in Brighton for transportation and delivery. The defendant had no business relations with the manufacturers of the automobiles or the railroad but dealt solely with the consignees.
The plaintiff’s work consisted in removing the seals on these freight cars and servicing the automobiles so that they could be driven out.
The plaintiff would then drive the automobile as instructed by the defendant, either to its warehouse or to the place of business of the consignee.
The defendant seasonably filed the following requests for rulings of law:
1. If the plaintiff had a contract with the defendant whereby the plaintiff was to receive a specified wage and if the plaintiff has received such specified wage, then the plaintiff is not entitled to recover.
2. The plaintiff is not entitled to recover under the “Fair Labor Standards Act of 1938.”
3. On the plaintiff’s own evidence of the work and labor performed for the defendant and money received from the defendant the plaintiff is not entitled to recover.
4. If the defendant as agent of the purchasers of automobiles shipped into Massachusetts, fueled, serviced . and drove such automobiles off of the freight cars (which had reached their final destination) and stored them for the purchasers, then the defendant was not engaged in interstate commerce and is not subject to the “Fair Labor Standards Act of 1938.”
The court denied all of the defendant’s requests for rulings as inapplicable to the facts as found.
Bequest #2 and #4 raised the question as to whether as a matter of law the defendant was engaged in interstate commerce so that the plaintiff, its employee, came *94 within the provisions of the Fair Labor Standards Act of 1938. '
The trial judge ruled that the defendant was so engaged, and found for the plaintiff for overtime wages under the provisions of said Act.
The defendant contends that it was not so engaged, and that the plaintiff was within the exemption contained in Section 13 (a) 2 of the Act which provides that the provisions of Sections 7 and 8 shall not apply with respect to any employee engaged in any retail or service establishment, the greater part of whose selling or servicing is in intrastate commerce.
The defendant has not raised in its pleadings any question of jurisdiction, nor has it raised the issue by its requests for rulings of law. However, it has called attention to this matter in its brief.
Our first problem is whether we should consider this question of jurisdiction.
It is clear that want of jurisdiction is not waived by a general appearance as in venue. The Locomobile Company of America v. Comm., 232 Mass. 16.
Nor can consent or waiver by the parties confer jurisdiction over a cause which is not vested in the court by law. Eaton v. Eaton, 233 Mass. 351.
And finally questions as to the jurisdiction of the court may be raised at any time. Such questions ought to be considered by the court of its own motion even though not urged by the parties. Lonergan v. Am. Ry. Express, 250 Mass. 30 at 40.
Therefore, this court may properly consider the question of jurisdiction.
We start out with the proposition that a District Court has original and concurrent jurisdiction with the Superior *95 Court in actions of contract, tort and replevin. Acts of 1934, Chapter 387, Section 1.
The Superior Court has, on many occasions, interpreted not only the application of Federal Statutes, but also the scope of the Federal Constitution itself. And this action has been confirmed in many instances by the Supreme Judicial Court of the Commonwealth.
For example, in Manning v. Met. Dist. Comm., 270 Mass. 348 at 352, the court said, “It is manifest that the statute was not violative of the 14th Amendment to the Federal Constitution.”
In Fitzwilliam Co., Inc. v. Comm., 258 Mass. 103, it was held that the provisions of G. L. Chapter 138, Sections 61-74, (forfeiture of container of intoxicating liquor) were not in violation of the Constitution of the United States.
In Nectow v. Cambridge, 260 Mass. 441, it was held that the fifth Amendment to the Federal Constitution did not govern the actions of the several states but only those of the Federal Government.
It is perhaps unnecessary to state that if the Supreme Judicial Court of the United States has interpreted a Federal Statute or the Federal Constitution that such decision is binding on our state courts. Michigan Central Ry. v. Vreeland, 227 U. S. 59 at 66, Taylor v. Taylor, 232 U. S. 363, National Prohibition Cases, 253 U. S. 350.
But this is entirely different from contending that the courts of this Commonwealth cannot pass on constitutional problems as may arise under the due process or commerce clause of the Constitution. Unless superseded by a Federal opinion to the contrary, the interpretation of our Supreme Judicial Court will stand.
*96 There is a large group of decisions with respect to State laws affecting interstate commerce which have been upheld in the absence of conflict with Federal laws. Comm. v. Nickerson, 236 Mass. 281 at 293. Northern Pacific Ry. v. Washington, 222 U. S. 370 at 377. Second Employers Liability Cases, 223 U. S. 1, 53 at 55.
Furthermore, the State law is as supreme and exclusive in its application to intrastate commerce as is the Federal law to interstate commerce. Corbett v. Boston & Maine Ry., 219 Mass. 351 at 356.
It is, of course, impossible to define, “Interstate Commerce.” All we can say is that interstate commerce is whatever the Supreme Judicial Court of the United States says, is interstate commerce. It is necessary, therefore, to analyze the decisions, and, from this analysis, attempt to reach the conclusion which that Court would reach.
In Rhodes v. Iowa, 170 U. S. 412, the Court held that the State had no jurisdiction relative to an interstate shipment while the merchandise was in transit under such shipment, until its arrival at the point of destination and delivery there to the consignee.
In Heyman v. Southern Railway, 203 U. S. 270, it was held that the goods received from another state and placed in the freight warehouse of the carrier, without any act of receipt by the consignee, had not arrived.
In Vance v. Vandercook Co., 170 U. S. 438 at 451, the Court said, “The Interstate Commerce clause of the Constitution guarantees the right to ship merchandise from one state into another, and protects it until the termination of the shipment by delivery at the place of consignment.” American Express Co. v. Iowa, 196 U. S. 133. Pabst Brewing Co. v. Crenshaw, 198 U. S. 17.
*97 In Adams Express Co., v. Kentucky, 206 U. S. 129, the Court affirmed the right of the citizen of one state to have delivered to him liquor purchased in another. This may mean delivery at his residence if such is the contract.
But these cases may he distinguished from the case at bar because, in the latter, the consignee had been notified by the railroad of the arrival of the goods, and in addition had paid the freight and expenses, instructing the carrier to place the freight car on a private siding of the defendant.
There was termination of the shipment by delivery at the place of consignment, and the interstate shipment had ceased.
In Comm. v. People Express Co., 201 Mass. 564 at 573, the Court said, “Whatever may be the meaning of the words “interstate commerce” and their significance is certainly very broad, goods brought from one state to another at some time reach a stage where they are no longer immune by reason of the interstate commerce clause from any otherwise legal interstate regulation.
In Batchelder v. Union Freight Ry., 289 Mass. 368, the Court ruled that the interstate transit ended with the acceptance of the cars by the defendant.
The case of Rosenbush v. Bernheimer, 211 Mass. 146, seems the reverse situation of the case at bar; in the former case it was held that a carrier, having in his hands cases of goods lying on a wharf for interstate shipment to their owner as consignee, may be charged in trustee process as trustee of such owner.
The Court held that the goods were not in transit. In the case at bar, the transit had ended.
It would seem clear that these goods in the case at bar could be reached by trustee process by creditors of the *98 consignee while in the possession of his agent, the defendant.
Furthermore, a state may pass regulations which may, to a. certain extent, affect interstate commerce but fall short of regulating such commerce in the sense in which the Constitution gives exclusive jurisdiction to Congress. For example as in Martin v. West, 222 U. S. 191 at 198, where the Court said, “Such interruption was incidental only.” Kidd v. Pearson, 128 U. S. 1 at 23, Penn. R. R. v. Hughes, 191 U. S. 277.
Our conclusion is that the interstate transit had ceased and the work in which the plaintiff was engaged was that designated as “Local Retail Servicing” under the exception contained in Section 13 (a) 2 of the Federal Fair Labor Act of 1938.
Therefore the work performed by the plaintiff was of intrastate nature and request #2 and should have been allowed.
Since the plaintiff has received all wages due him unless he were engaged in interstate commerce, the order must be that the finding for the plaintiff is vacated and a finding is to be entered for the defendant.